CROW v. BECK. (7 Div. 286.)

(Supreme Court of Alabama. Nov. 16, 1922.)

1. **Detinue ⬦24—Valuation of property in verdict for defendant held proper.**

In a verdict for defendant in an action of detinue to recover lint cotton and cotton seed, provisions separately finding the total values of the lint cotton and of the seed were sufficient under the rule that the jury must assess the value of each article separately.

2. **Landlord and tenant ⬦328(5) — Cropper loses right to possession by refusing division.**

While the laborer who makes the crop has the right to retain possession of it until his lien is paid, he loses such right if, before division, he assumes control over it against the right of the man who furnished the land and teams, by refusing to divide it and to recognize the right of the landowner to his part, and thereafter the landowner can recover his share in a suit in detinue.

3. **Agriculture ⬦13—Landowner has legal title to crop subject to laborer's lien.**

Under Code 1907, § 4743, as amended by Acts 1915, p. 112, governing the rights to a crop where one party furnished the land and the teams and the other the labor under an agreement for division of the crop, the landowner has legal title to the crops produced, subject to the laborer's lien for the value of his share of the crop.

4. **Agriculture ⬦13—Laborer cannot hold portion to enforce demands other than for his share.**

A laborer's lien for the value of his share of the crops produced does not entitle him to hold the crop for any purpose except the bona fide securing and enforcing of the lien for his interest.

5. **Detinue ⬦5—Plaintiff must have legal title and right to immediate possession.**

To maintain detinue, plaintiff must have a general or special legal property in the goods and the right to immediate possession thereof, an equitable lien not being sufficient, and, if he has never had actual possession, he must have the legal title.

6. **Landlord and tenant ⬦331(3)—Landowner can recover crop if tenant is holding for any purpose except lien.**

Since the one who furnishes the land and the team for the production of the crop has the legal title thereto, subject only to the laborer's lien for the value of his share, the former can maintain detinue where the latter is seeking to withhold possession of the crop for the enforcement of any claim against the former other than the claim secured by the lien.

7. **Appeal and error ⬦197(3)—Variance not called to attention of court below is of no avail on appeal.**

Where the court's attention was not called to a variance when the affirmative charge was requested, at which time the complaint could have been amended to meet the proof, defendant cannot on appeal avail himself of that variance to sustain the verdict in his favor.

8. **Landlord and tenant ⬦331(3)—Charge laborer could hold crop until lien was paid held error.**

Where there was evidence that a laborer was holding the crop for the settlement of claims against the landowner other than the claim for the laborer's share in the crop, a charge that the laborer was entitled to hold the crop under his lien until the lien was paid was erroneous as indicating that the only way in which the cropper could be put in default as to the crop in possession would be for the landowner to satisfy the lien before exercising any act of ownership.

9. **Appeal and error ⬦882(12) — Party is bound by erroneous charge invoked by him inconsistent with general charge.**

A party who has invoked an erroneous special charge in his favor is bound by the error contained therein, though the correct rule was stated in the general charge.

Sayre, Somerville, and Gardner, JJ., dissenting.

Appeal from Circuit Court, De Kalb County; W. W. Haralson, Judge.

Action in detinue by J. O. Crow against Bob Beck. From a judgment for defendant, plaintiff appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

The verdict of the jury is as follows:

"We, the jury, find the issue in favor of the defendant for the property sued for 2,375 pounds of lint cotton and 4,250 pounds of cotton seed, and assess the value of the property as follows: 2,375 pounds of lint cotton at $665 and 4,250 pounds of cotton in the seed value at $159.40."

The following charges requested by the plaintiff were refused by the trial court.

A. I charge you, gentlemen of the jury, that if you believe the evidence in this case you

will find a verdict for the plaintiff for the property sued for.

B. I charge you, gentlemen of the jury, that, if you believe from the evidence in this case that defendant was holding the cotton for the purpose of collecting damage out of plaintiff, then he had no right to hold same, and your verdict should be for the plaintiff.

C. I charge you, gentlemen of the jury, that, if you believe from the testimony in this case that defendant was holding the cotton in question for any other purpose than the bona fide purpose of securing a settlement of his lien for his one half of the cotton, then you should find the issues in favor of the plaintiff.

D. I charge you, gentlemen of the jury, that, if you believe the testimony in this case, your verdict should be for the plaintiff.

Baker & Baker, of Ft. Payne, for appellant.

The appellee was not holding the cotton for the purpose of securing his lien, but was holding under a claim for damage. He was therefore in default, and plaintiff was entitled to the affirmative charge. Code 1907, § 4743; 9 Ala. App. 439, 63 South. 781; 184 Ala. 54, 63 South. 466; 25 Cyc. 676; 150 Ala. 587, 43 South. 926. Charges B and C asserted correct principles of law and should have been given at the request of plaintiff. Code 1907, § 4743; 184 Ala. 54, 63 South. 466; 9 Ala. App. 439, 63 South. 781; 65 Ala. 382. The jury should have assessed the value of each article separately—one bale of cotton and the seed therefrom, and about 4,500 pounds of seed cotton—as claimed in the complaint and as shown by the testimony. Code 1907, § 3781; 194 Ala. 642, 70 South. 128.

Isbell & Scott, of Ft. Payne, for appellee.

No objection was made to the manner of proving value, and the verdict of the jury was sufficient. 7 Ala. 189; 46 Ala. 698; 49 Ala. 134.

THOMAS, J. This is the second appeal in this case. Beck v. Crow, 204 Ala. 295, 85 South. 489. After reversal, the issue of fact was submitted to the jury by oral charge, instructing that defendant had no right to hold the cotton for "something he claimed" of plaintiff other than defendant's one-half interest, plaintiff furnishing the teams and the land and defendant furnishing the labor.

[1] A question in the case is whether there was a sufficient valuation assessed by the jury on the property made the subject of suit in detinue. The evidence showed that the cotton had been ginned and baled, which testimony came from the appellee, who had possession and control of the cotton, and whose duty it was to gather and prepare it for market.

In Gwin v. Emerald Co., 201 Ala. 384, 78 South. 758, Code, § 3781 was discussed, and authorities collected to the effect that upon the trial of an action in detinue the jury must, after finding for plaintiff, assess the value of each article separately, if practicable, and also assess damages for its detention; and, if they find for defendant, they must in like manner assess the value, and, if in the possession of the plaintiff, assess damages for its detention (if such be claimed), and, where plaintiff has failed to prove the value of the property sued for, judgment cannot be entered for him; and it is not error to give a general charge for defendant. The value of the property sued for was properly assessed by the jury, and judgment therefor rendered. There was no error in refusing charges (we denominate) A and D on this ground.

[2] The court in the general charge to the jury said that:

"While the laborer, the man who makes the crop, who does the work, has the right to the possession of the crop, the immediate possession of it, and to hold it until his lien is paid, yet, gentlemen of the jury, if, before a division of the crop, if the laborer assume control over it against the right of the man who owns the land and puts himself in the wrong by refusing to divide it and refusing to recognize the right of the plaintiff, the landowner, to have his part, if then he wrongfully and without legal excuse therefore attempts to confiscate the crop to his own use, then if he does that he puts himself in the wrong, and when he is in the wrong, the plaintiff may bring suit for his stuff and recover, in a case like this."

When considered with other portions of the oral charge, there was no error in that to which exception was reserved.

[3] The construction in Williams v. Lay, 184 Ala. 54, 63 South. 466, was of section 4792, and not section 4743, of the Code of 1907. We think the amendment of the latter statute (Acts 1915, p. 112) defined the interest in the crop so raised as acknowledging the legal title to be in the party as employer who furnished the land and teams to cultivate his land, whether or not he furnished all or any part of the fertilizer, and that the legal title was subject to the lien of the employé who furnished the labor to cultivate the land and raise the crop. The extent of the lien thereon of the employé is limited by provisions contained in the statute to such a portion of the crop as may be necessary to satisfy the "demand of the laborer" in its raising. That this is the proper interpretation of the amended statute (Acts 1915, p. 112) finds support in the declaration contained in Tucker v. Speer, 202 Ala. 604, 81 South. 546, that—

"The title to the crop in question was in Tucker, the employer. * * * The measure of the laborer's lien being in a sum equal to the 'value of the portion of the crop to which he is entitled.'"

This statement of the title and lien is supported in Farrow v. Woolley & Jordan, 149 Ala. 373, 43 South. 144, where the assignee of the laborer's lien was held not sufficient

to maintain trover; Jordan v. Lindsay, 132 Ala. 567, 31 South. 484; Carleton v. Kimbrough, 150 Ala. 618, 43 South. 817; Foust v. Bains Bros., 167 Ala. 115, 52 South. 743, where laborers sought to mortgage their interests; Vandegrift & Sons v. Hawkins, 160 Ala. 430, 49 South. 754; Johnson v. McFry, 13 Ala. App. 619, 68 South. 718; decided before the last amendment as to fertilizers; Hudson v. Wright, 1 Ala. App. 433, 56 South. 258; Tate v. Cody-Henderson Co., 11 Ala. App. 350, 66 South. 837; Willard v. Cox, 9 Ala. App. 439, 63 South. 781.

[4] Under the present appeal, the record discloses evidence that warranted the inference that appellant was holding the possession, not only to enforce his statutory lien to one-half the crop, less the price of fertilizer used in its cultivation, but for the collection of other claims for damages made by the laborer-employé against the employer-landowner. If such was the case, the employé had no right to hold the cotton for such other purpose—not for the bona fide object of securing and enforcing a settlement of his statutory lien for an interest in the crop as the laborer who produced the same. Acts 1915, p. 112, amending Code, § 4743; Lauderdale v. Flippo & Son, 200 Ala. 11, 75 South. 323. On first appeal (Beck v. Crow, supra) it was stated that the employé was in possession, holding under a lien created by statute for the laborer, and that possession cannot be justified for the purpose of extracting from the owner of the land a compromise or payment of other claims or debts; that the laborer raising the crop had a primary right of possession of such part of the crop as was subject to his statutory lien, and that interest did not prevent the employé from becoming a tort-feasor or being in default in dealing with the crop in such wise as imperiled the title and interest therein of the employer. If there is conflict between Beck v. Crow, supra, and Tucker v. Speer, 202 Ala. 604, 81 South. 546, and Carleton v. Kimbrough, 150 Ala. 618, 43 South. 817, the former is modified or overruled in respects indicated.

[5] Further discussion of the question of repository of the legal title to a crop so grown on the lands of another is unnecessary; yet it may not be out of place to advert to the general rule that detinue will not lie by a person holding merely an equitable lien. 18 C. J. 997, § 16; Butler-Kyser Mfg. Co. v. Central of Ga., 190 Ala. 646, 67 South. 393 (trial of right of property under Code, § 3792); Johnson v. New Enterprise Co., 163 Ala. 463, 50 South. 911 (interpleader at law under Code, §§ 3792, 6039); Jones v. Anderson, 76 Ala. 427 (detinue for oxen and logging outfit); Jackson v. Rutherford, 73 Ala. 155 (detinue for personal property mortgage). In the latter case is contained a statement of the general rule that to maintain an action of detinue plaintiff must have a general or special property in goods sought to be recovered, and the right to immediate possession thereof; and in all cases where he has never had the actual possession, he must have the legal title in order to entitle him to a recovery. In the notes supporting the foregoing text of Corpus Juris is a quotation from Johnson v. New Enterprise Co., supra (interpleader at law, as we have indicated), that—

"A lienor or other equitable holder has no such title as would sustain detinue, and a system, at law, would be at least incongruous that permitted one whose title was not sufficient to maintain detinue to defeat an action by one whose right to the possession of the chattel was superior."

This by analogy supports the view we have announced.

[6] From what is to be found of an expression of the legislative intent in this and analogous statutes the legal title is said to be in one who furnishes the land and stock to make a crop and an equity or lien in such part of the crop so grown in favor of the laborer who produced the crop by his labor, the extent of which lien being declared to be "for the value of the portion of the crop to which he is entitled." It is to be noted that the statute for construction expressly limits the lien on the crop to the value of the portion, etc., and concludes with the further limitation that when such lien is sought to be satisfied by attachment no more of the crop shall be levied on "than may be necessary to satisfy the demand of the laborer." What is meant by the use of the word "demand" in the last-quoted clause? No more than the lien fixed and secured upon the crop produced by the employé's labor. The statutory lien was not of the nature and solemnity of title of which the owner of the land was invested in the usufruct or product of his lands. If there are expressions in the foregoing authorities contrary to this view, they are modified so as to harmonize herewith. Charges denominated B and C were improperly refused.

[7] If there was a failure of response in the verdict to the complaint, when the affirmative charge was requested the court's attention was not called to that variance now insisted upon. If it existed, the complaint could have been amended to meet the proof. Appellee takes nothing on this ground, as to refusal of the general charge requested. Circuit court rule 34, 175 Ala. p. xxi, B. M. & F. Co. v. Walpole, 202 Ala. 175, 79 South. 659; Bowdoin v. Ala. Chem. Co., 201 Ala. 582, 79 South. 4; Morrison v. Clark, 196 Ala. 670, 72 South. 305; Allen v. Stand. Ins. Co., 198 Ala. 522, 73 South. 897; Ferrell v. Ross, 200 Ala. 90, 75 South. 466; United Bros. v. Kelly, 199 Ala. 678, 75 South. 312; Bickley v. Porter, 193 Ala. 607, 69 South. 565; Sou.

Rwy. Co. v. Jordan, 192 Ala. 528, 68 South. 418; L. & N. v. Rayburn, 198 Ala. 191, 73 South. 461; U. S. etc., Ins. Co. v. Goin, 197 Ala. 584, 73 South. 117.

[8] A given charge for defendant on which error is predicated was:

"I charge you that under a contract like the one here in question, the servant or the man growing the crop is entitled to hold the crop under his lien until his lien is paid."

Under the evidence, this statement of the law does not square with the construction we have given section 4743 of the Code, as amended by the act of 1915 (page 112). The charge asserts the law to be that the only way in which the employé could be put in default or become a tort-feasor as to the crop in possession—raised on land and with the team of the employer—would be for the employer (whatever the circumstances) to satisfy the laborer's lien before the exercise of any act of ownership as to its removal from his or the laborer's premises and before its sale in the market. In the former opinion in this case it was conceded that the employé might put himself in default as to the right to further possession, and might become a tort-feasor in relation to the property, and as against the right of property and possession by the owner of the land and teams, in which crop the parties had, respectively, a property and a lien. Any other construction would unnecessarily imperil the property right of the owner of the land and extend to the laborer a right greater than the legislative intent contained in the statute, as we have indicated.

The cases cited to the proposition, that a lienor in possession of property subject to his lien is not liable in detinue to the owner until the lien has been discharged, have been examined, and are not in conflict with foregoing. In McBrayer v. Dillard, 49 Ala. 174, 177, the suit was in detinue by the owner of property claiming that the same was exempt to him; the possession had been taken by attachment issued on statutory grounds "that McBrayer was about to remove out of the state." The court said:

"Here the attachment suit had been permitted to pass beyond the remedy provided by these sections. It could not, then, apply. The court has jurisdiction to make the order for the sale. Rev. Code, § 2956. The law giving this authority is in these words: 'If the property levied on be perishable, it must be sold by order of the court, on motion of either party, and the proceeds of the sale retained by the sheriff to await the decision of the cause, unless the court otherwise direct.' The sheriff has no authority to suspend such an order, or to disregard it. Unless he could do this, he could not release the property ordered to be sold, to the defendant. And under the facts in this case, the plaintiff in the court below had no right of action against him for the mules, or the proceeds of their sale in his hands, without an order of court for the same."

So Spence v. McMillan, 10 Ala. 582, was detinue against sheriff.

The case of Seals v. Edmondson, 73 Ala. 295, 49 Am. Rep. 51, was an action for recovery of personal property in specie—4 bales of cotton. The statement of fact shows that a warehouse in the city of Eufaula, owned and operated by the plaintiff for the storage of cotton, and its contents, were destroyed by fire, except about 14 bales. "Of the cotton stored in the warehouse at the time of the fire, the defendant owned 12 bales for which he had the plaintiff's receipt as warehouseman." The 14 bales which were saved were rendered undistinguishable as the result of the fire, 4 bales of which were gathered up by direction of defendant and the fire therein extinguished. It was this cotton in defendant's possession at the time for which the suit was brought. The defendant offered testimony tending to show that with knowledge or implied consent of plaintiff he expended the labor and expense in saving and rebaling the cotton made the subject of the suit, and to the extent or worth of more than $60. It was not shown that plaintiff paid or tendered this or any amount to defendant before instituting suit. The controlling principle applied by the learned justice was that "plaintiff must have, as against the defendant, a present, unqualified right to the possession of the chattel in its present form;" that "if there be any preliminary act or condition precedent to be performed before the unqualified right of possession attached, then detinue cannot be maintained." The denial of plaintiff's right was in view of the evidence that an express or implied agreement existed between the parties that forbade an unconditional right to the 4 bales of cotton to plaintiff without payment or tender of the value of the labor and expense by defendant in and about saving and baling the cotton. The plaintiff, having the lawful possession of the cotton as warehouseman, had such qualified right to it, in the absence of other facts, as that of labor and expense in the salvage of the cotton, he could sue and recover against one found in possession of it, "not showing a better title." The observation is made that the fact that defendant owned 12 of the 750 bales of cotton stored in the warehouse when it was burned—that waste cotton enough to make 14 bales was saved by the defendant—did not of itself tend to prove that any part of the 4 bales so salvaged by him was his cotton.

The effect of the cases is that a mere equitable title will not be sufficient on which to maintain detinue; that to maintain detinue the plaintiff must have as against defendant a present, unqualified right to the possession of the chattel in its present form and have a special or general property in the chattel; that if plaintiff has not had actual possession he

must show a legal title thereto. Hicks v. Meadows, 193 Ala. 246, 254, 69 South. 432; Minge v. Clark, 193 Ala. 447, 69 South. 421; Knight v. Garden, 196 Ala. 516, 71 South. 715. There was a phase of the evidence that showed the plaintiff, under the statute, had the legal title in the property, and the right of possession at the time of the institution of the suit and at the trial. The lien of the laborer is safeguarded under this and other statutes having application for protection and enforcement of the lien. Montgomery Enterprises v. Empire Theater, 204 Ala. 566, 574 (12), 86 South. 880, 19 A. L. R. 987.

[9] The aforequoted charge does not correctly state the law as we have indicated. Having invoked the court to error in special instruction that was contrary to that contained in the general charge, defendant is bound by the error contained in the last contradictory instruction to which he had induced the court. B. R., L. & P. Co. v. Seaborn, 168 Ala. 658, 53 South. 241; Talley v. Whitlock, 199 Ala. 28, 73 South. 976.

The judgment is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and MILLER, JJ., concur.

SAYRE, J. (dissenting). Defendant in the trial court had possession and a lien as provided by section 4743 of the Code. This section provides that "the laborer (defendant) shall have a lien upon the crop produced by his labor for the value of the portion of the crop to which he is entitled," meaning entitled by the terms of the contract between him and the landowner. The character of the lien is not defined. We are left to define it according to common-law principles. We think the lawmakers did not intend an equitable lien, for such liens are raised by implication. It is of the essence of an equitable lien that as long as the lien continues the possession of the thing subject to the lien remains with the person who holds the proprietory interest subject to the incumbrance. In this respect the equitable lien differs from a common-law lien, "which is simply a right to retain possession of the chattel until some debt or demand due the person thus retaining is satisfied; and possession is such an inseparable element that, if it be voluntarily surrendered by the creditor, the lien is at once extinguished." 3 Pom. Eq. Jur. (4th Ed.) § 1233. To the same effect is Voss v. Robertson, 46 Ala. 483. The laborer in this case is the creditor, and the statute gives him a lien. It may be that the Legislature did not intend to concede so much to the laborer, whose contract it had changed, but this is what it has done, and this court in more than one case has so decided. Why now should the lien and its necessary incidents be denied? This court, by its present Chief Justice, has said that the laborer "was the legal custodian or bailee of the crop, even if plaintiff (who had furnished land and team) was the owner, and was not a tortfeasor until put in default" (Williams v. Lay, 184 Ala. 54, 63 South. 466), though just how he can be put in default except by a tender of the wages due does not appear. Why is this case, as well as Beck v. Crow, 204 Ala. 295, 85 South. 489, overruled in effect? The statute makes a contract for the parties in lieu of one they have made for themselves. It takes away the laborer's title, but leaves him with a lien. Conceding the right of the Legislature to do this, why now should the laborer be deprived of his lien, or that possession which is a necessary incident of his lien? If the cases to which I have referred mean anything, they mean that the laborer has the right to the possession, and so the court has held heretofore, and I can see no good reason for a change of heart or mind. With the policy of the statute this court is not concerned.

Now to establish plaintiff's right to recover in the action of detinue it is necessary for him to show that he has, not only a general or special property in the chattel sued for, but he must show a right to the immediate possession. Numerous authorities to this effect are noted in 5 Michie's Digest of Alabama Reports, at the top of page 64. Cases are cited in the prevailing opinion to the effect that detinue cannot be maintained on an equitable title, seeming to overlook the fact that plaintiff appellee is not seeking to maintain, but only to defend against, an action of that character.

These observations may appear to be rather elementary in their nature, but in the circumstances reference to them seems necessary.

SOMERVILLE and GARDNER, JJ., concur in the foregoing dissent.